UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TONY MUSCHLER,                           :
                                         :
      Plaintiff,                        :
                                         :
  v.                                     : CIVIL NO. 3:CV-14-1611
                                         :
BRENDA L. TRITT, <u>et al</u>.,                : (Judge Kosik)
                                         :
      Defendants.                       :

## <u>MEMORANDUM</u>

This civil rights action, pursuant to 42 U.S.C. § 1983, was filed by Tony Mutschler, an inmate confined at the State Correctional Institution at Frackville ("SCI-Frackville"), Pennsylvania. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 21.) For the reasons that follow, the motion will be granted.

**I.  Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir.

2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)(quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at

2

556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

II.  **Allegations in the Complaint[1]**

Named as defendants in this action are the following SCI-Frackville employees: Brenda L. Tritt, Facility Manager; A. Kovalchik, Department Superintendent; Sharon Luquis, Hearing Examiner; and Correctional Officers Alsheski and Lynch. Plaintiff also names John Wetzel, Secretary of the Pennsylvania Department of Corrections, and Robin Lewis, DOC Chief Hearing Examiner, as defendants.

Plaintiff alleges that on April 8, 2014, Defendant Luquis denied him witnesses and the opportunity to present evidence during a misconduct hearing, in violation of his due process rights. (Doc. 1, Compl. at 2.) As such, her decision finding him guilty was based on an incomplete record. He further claims that although he was suppose to be paroled in April of 2014, parole never occurred due to the misconduct. According to Plaintiff, if he was not found guilty of the misconduct, he would be out

---

[1] Pursuant to the Court's order dated October 22, 2014, the standing Complaint in this action consists of Documents 1 and 9. (Doc. 10.)

of prison.

Plaintiff also seeks to hold Defendants Kovalchik and Tritt responsible for the violation of his due process rights with respect to their rulings on his misconduct hearing appeals.  As a result of these violations, he requests to be either: (1) reinstated to parole status with an immediate parole hearing, and to receive the sum of $500.00 plus the costs associated with this lawsuit; (2) placed on the waiting list for a bed at a halfway house or mental health placement in Danville State Hospital, and to receive $200 plus costs; or (3) paroled to Danville State Hospital for treatment and then released to a home plan, and to receive the amount of $250.00 plus costs.  (Id. at 3.)

Plaintiff also alleges that Defendants Alsheski and Lynch deprived him of due process when they issued the false misconduct report against him that contained lies.  (Doc. 9 at 2.)  Plaintiff claims that he was deprived due process when he was not given access to videotapes that would have revealed Defendants' lies and demonstrated his innocence.  (Id.)  Plaintiff states he plans to pursue retaliation claims in a separate suit.  (Id.)

Plaintiff lists Defendants Wetzel and Lewis in the caption of his amendment.  Lewis is never again mentioned in the body of the Complaint.  Wetzel is only mentioned to the extent that Plaintiff states he is the head of the DOC, and is legally responsible for the overall operations of each institution within the DOC.  (Id. at 2.)  With respect to these claims, Plaintiff seeks declaratory, injunctive, compensatory and

punitive relief.

### III.   Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983; Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

#### A.   Personal Involvement

Defendants move to dismiss all claims against Defendants Tritt, Kovalchik, Wetzel and Lewis, on the basis of failure to allege personal involvement.  Personal involvement in the alleged wrongdoing is necessary for the imposition of liability in a civil rights action.  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005); Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003).  Section 1983 liability cannot be predicated solely on *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct.  Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).  A supervisory defendant may be liable if he directed, or knew of and acquiesced in, the deprivation

5

of a plaintiff's constitutional rights.  <u>Rode</u>, 845 F.2d at 1207-08.  Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  <u>Id</u>. at 1208, quoting <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1120 (3d Cir. 1990), <u>cert</u>. <u>denied</u>, 501 U.S. 1218 (1991).

Additionally, participation in the after-the-fact review of a grievance is not enough to establish personal involvement.  <u>See</u>, <u>e.g</u>. <u>Rode</u>, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement); <u>Brooks v. Beard</u>, 167 F. App'x 923, 925 (3d Cir. 2006)(per curiam)(allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); <u>Burnside v. Moser</u>, 138 F. App'x 4114, 416 (3d Cir. 2005)(per curiam)(failure of prison official to process administrative grievance did not amount to a constitutional violation or personal involvement in the alleged constitutional deprivation grieved).  It has also been found that simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints, is not enough to demonstrate they had requisite personal involvement.  <u>See</u> <u>Rivera v. Fischer</u>, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim).

The only mention of Defendants Wetzel, other than in the listing of Defendants, is when Plaintiff identifies him as the head of the DOC and therefore legally responsible for the operations of all institutions.  Defendant Lewis is only mentioned in the listing of Defendants, and nowhere in the body of the Complaint.  As such, dismissal of said Defendants is warranted on the basis of lack of personal involvement.

Plaintiff seeks to hold Defendants Tritt and Kovalchik liable for the violation of his rights due to the fact that they affirmed the Hearing Examiner's finding of guilt.  Plaintiff complains that said Defendants failed to remedy the Hearing Examiner's errors, and therefore are also responsible for violating his rights.  Because there are no allegations that Tritt and Kovalchik were involved in the underlying incidents that took place, they cannot be held accountable due to their failure to overturn the Hearing Examiner's findings on appeal.  See Rauso v. Vaughn, 2000 WL 873285 (E.D. Pa. 2000); Bey v. Pennsylvania Dep't of Corrections, 98 F. Supp. 2d 650 (E.D. Pa. 2000).   For these reasons, Defendants' motion to dismiss will also be granted with respect to Defendants Tritt and Kovalchik.

**B.    Fourteenth Amendment Due Process**

Defendants argue that Plaintiff also fails to state a claim that his due process rights were violated by the falsified incident report, misconduct proceedings and untimeliness of responses to his appeals therefrom.

7

First, although Plaintiff maintains that the incident report issued against him was false/contained lies, the filing of a false misconduct report does not violate an inmate's due process rights. The general rule, as stated in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), provides that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." An inmate has the right not to be deprived of a protected liberty interest without due process of law. Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.

In analyzing a due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000)(citing Fuentes v. Shevin, 407 U.S. 67 (1972)). Once the court determines that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Protected liberty or property interests generally arise either from the Due Process Clause or from some specific state-created statutory entitlement. See Board of Regents v. Roth, 408 U.S. 564, 575 (1972). However, in the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty

8

> interest that is protected by procedural due process guarantees. Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an *'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'* . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44 (citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings, which result in sanctions of disciplinary segregation for six months and even more, do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and, therefore, do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement); see, e.g., Dunbar v. Barone, 12-1337, 2012 WL 2775024 (3d Cir. July 10, 2012)(finding that an inmate placed in disciplinary custody for 540 days as a result of misconduct, and presenting no evidence that conditions he faced in disciplinary custody amounted to an "atypical and significant hardship," does not amount to a due process violation under Sandin); Griffin v. Vaughn, 112 F.3d 703, 705-07 (3d Cir. 1997)(ruling that fifteen months in segregation was not an atypical and significant hardship); Henderson v. Kerns-Barr, 313 F. App'x 451, 452

9


(3d Cir. 2008)(90 days disciplinary confinement did not implicate a liberty interest).

As such, to the extent Plaintiff asserts due process claims against Defendants Alsheski and Lynch for writing false documents, and against Defendant Luquis for denying him the right to call witnesses and present evidence, he fails to articulate a sufficient liberty interest to trigger a valid due process claim in the prison setting for the following reasons. First, with respect to the challenged misconduct proceedings, Plaintiff was only sanctioned to 180 days disciplinary confinement. (Doc. 28-2 at 7.) Second, he does not raise any claims that the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates in solitary confinement. See Shoats, 213 F.3d at 144.

Plaintiff appears to support his due process claim, as well as raise a cruel and unusual punishment claim under the Eighth Amendment, by arguing that the disciplinary confinement he received as a sanction for the misconduct, negatively impacted his parole opportunity. Any such claim is wholly without merit. It is well-established that an inmate does not have a right to release on parole under Pennsylvania law or the United States Constitution. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979)("there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence"); Weaver v. Pa. Bd. of Prob. and Parole, 688 A.2d 766, 770 (Pa. Commw. 1997)(under Pennsylvania law, parole is a favor, and the prisoner has no

protected liberty interest in being released before a legitimately imposed sentence has expired). Similarly, ". . . there is no constitutionally mandated right to enter a discretionary parole release program." Winsett v. McGinnes, 617 F.2d 996, 1005 (3d Cir. 1980), cert. denied, 449 U.S. 1093 (1981); Rauso v. Vaughn, No. 96-6977, 2000 WL 873285, at *7 (E.D. Pa. June 26, 2000)(parole is not a constitutionally protected liberty interest); Reider v. Commonwealth of Pa., 93 Pa. Commw. 326, 502 A.2d 272 (1985)(denial of pre-release status to inmate who met all minimum criteria for participation was not a due process violation). Consequently, Plaintiff's assertion that the alleged fabricated misconduct impeded or prevented his parole release, even though he believed he would be granted parole release, does not implicate the violation of a constitutional right.

**C.    Retaliation**

The Defendants also move to dismiss any claim of retaliation Plaintiff seeks to advance against them. In reviewing the Complaint, the only mention of retaliation the Court can find is with respect to the following statement made by Plaintiff:

> Because of recent events and continuing retaliation there is another suit that will be filed separate (*sic*) from this suit for the beating I received with my hands cuffed behind my back. This type of retaliation continues because I made swore (*sic*) statements against the staff here in this falicity (*sic*) that I personally witness (*sic*) and was expected to look the other way and I did not.

(Doc. 9 at 3.) The only other mention of "retaliation" in the Complaint is when Plaintiff uses the word "retaliation" when he lists his claims, and when he requests

11

injunctive relief in the form of a transfer, claiming he would have been paroled or moved to the Danville State Hospital for treatment if "the retaliation would not have happened." (Id. at 3-4.)

The First Amendment offers protection for a wide variety of expressive activities. See U.S. Const. amend. I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities may infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001)(quoting Allah, 229 F.3d at 225).

The last Rauser prong requires a prisoner to establish a causal link between the exercise of his constitutional rights and the adverse action taken against him. The Court employs a burden-shifting regime to determine whether a causal link exists. The prisoner bears the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him or retaliate against him. See id. (citing Mount Healthy City Sch. Dist. Bd. of Educ. v.

12

Doyle, 429 U.S. 274, 287 (1977)).  The burden then shifts to the defendants to prove by a preponderance of the evidence that they would have taken the same disciplinary action even in the absence of the protected activity.  See id.  If defendants prove that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest, they will prevail in the retaliation action.  See id. at 334.

In establishing the elements of a retaliation claim, a plaintiff must produce more than "general attacks" upon the defendant's motivations.  A plaintiff must produce "affirmative evidence" of retaliation from which a jury could find that he carried his burden of proving the requisite motive.  See Crawford-El v. Britton, 523 U.S. 574, 600 (1998)(internal citations omitted).

First, Plaintiff appears to state that he will be pursuing his retaliation claims in a separate action to be filed with the Court.  (Doc. 9 at 3.)  As such, the Court does not necessarily construe the instant Complaint as raising any retaliation claims in this action.  However, to the extent that the Court misconstrues Plaintiff's intentions, any claim for retaliation attempted to be advanced in the Complaint is wholly inadequate.  Plaintiff fails to set forth any facts alleging that he was engaged in any constitutionally protected conduct when he was issued the misconduct by Defendants.[2]  There are simply no facts alleged to support any inference that the

---

[2] When Plaintiff states that he intends to pursue retaliation claims in a separate action, he references being beaten ". . . because [he] made sworn statements against

misconduct issued was done so for any reason other than Plaintiff's behavior. Plaintiff sets forth nothing but an unsupported legal conclusion.

Moreover, Plaintiff must allege facts to show that the adverse action he allegedly suffered was "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d at 220, 224-25 (3d Cir. 2000)(internal quotation and citation omitted). Further, even if facts were alleged to satisfy the first two Rauser prongs, nowhere in the Complaint are there any facts alleged to suggest a causal link between any constitutionally protected activity and the issuance of the alleged false misconduct. Rather, to the extent Plaintiff even intends to pursue a retaliation claim in the instant action, the most he sets forth is a completely conclusory, unsupported claim. For these reasons, any such claim will be dismissed.

**IV.   Conclusion**

Based on the foregoing, Defendants' motion to dismiss will be granted. An appropriate order follows.

---

staff members." (Doc. 9 at 3.) However, there is no indication whatsoever in the Complaint that this conduct was the reason behind any alleged retaliation for the filing of the false misconduct charges.