IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TONY MUTSCHLER, :
:
    Plaintiff, :
:
v. : No. 3:14-CV-1611
:
BRENDA TRITT, *ET AL.*, : (Judge Brann)
:
    Defendants. :

**MEMORANDUM OPINION**

**AUGUST 31, 2018**

**I.    BACKGROUND**

Tony Mutschler, an inmate presently confined at the Fayette State Correctional Institution, LaBelle, Pennsylvania, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  The United States Court of Appeals for the Third Circuit issued an Opinion on April 13, 2017, which remanded this matter with instructions to allow Plaintiff opportunity to amend his complaint.  Following remand, this matter was reassigned to the undersigned.

By Order dated May 16, 2017, the Plaintiff was directed to file an amended complaint.  After the grant of two extensions of time, Mutschler submitted an Amended Complaint.  *See* Doc. 52.

Named as Defendants are the following employees at Plaintiff's prior place of confinement, the State Correctional Institution, Frackville, Pennsylvania (SCI-Frackville): Superintendent Brenda Tritt; Deputy Superintendent A. Kovalchik; Hearing Examiner Sharon Luquis; as well as Correctional Officers Alsheski, Lynch, R. Jones, Starling, and C. Schultz. Mutschler initially alleges that on March 23, 2014 Correctional Officers Jones and Starling searched his cell as a retaliatory measure and removed legal books and his autobiography, with the exception of page one. *See id.* p. 5, ¶ 2. Plaintiff indicates that the search was undertaken at the direction of Defendant Schultz who is described as having a history of retaliatory mistreatment. *See id.* at p. 10.

The following day, Plaintiff was taken to the prison's Restricted Housing Unit (RHU). On March 25, 2014, Mutschler was issued a misconduct charging him with possession of contraband, specifically, forty-eight (48) books which were allegedly prison property. The charge was purportedly dismissed following an April 1, 2014 disciplinary hearing because it was established that the publications at issue were actually Plaintiff's personal legal property.

On that same day, Mutschler states that he was issued a second misconduct relating to the confiscated autobiography. *See id.* at p. 5. The Amended Complaint indicates that the seized document was deemed to be contraband, specifically sexual material. Mutschler contends that he was writing his

autobiography so that the prison's mental health staff would have a better understanding of his background. The Plaintiff was found guilty of the possession of sexual material charge by Chief Hearing Examiner Luquis after an April 8, 2014 disciplinary hearing and given the sanction of a one hundred and eighty (180) day period of disciplinary confinement. *See* Doc. 52, ¶ 7.

Plaintiff asserts that he was denied the opportunity to attend his hearing because Defendants Lynch and Alesheski falsely stated to the presiding hearing officer that he had refused to attend the proceeding. Plaintiff describes the actions of those two Defendants as being a violation of the Pennsylvania Criminal Code. *See id.* at p. 13. It is also asserted that Luquis failed to investigate the veracity of the statement by Lynch and Alesheski. As a result, Mutschler concludes that he was denied the right to call witnesses and to present evidence. He also asserts that there was an incomplete record.

An administrative appeal of the adverse misconduct determination was denied by Superintendent Tritt. Plaintiff indicates that as a consequence of the failure of Defendant Tritt to investigate his claim of innocence and overturn the misconduct, he was not considered for release on parole.

Defendants have responded to Plaintiff's Amended Complaint by filing a motion to dismiss for failure to state a claim upon which relief could be granted. *See* Doc. 56. The unopposed motion is now ripe for consideration.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. A court when ruling a motion to dismiss under Rule 12(b)(6), must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007)(quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)).

In order to demonstrate a plausible right to relief, a plaintiff must present facts that, if true, would show that he or she is entitled to relief. *See* Fed. R. Civ. P. 8(a), *see also, Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This provision requires a plaintiff to present "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of his cause of action. *Id.* at 556. A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* A plaintiff's legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. *See id.* at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. A court considering a motion to dismiss must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). I note that *pro se* pleadings are to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

B. **Personal Involvement**

The initial argument for dismissal asserts that the Amended Complaint fails to adequately allege personal involvement by Superintendent Tritt, Deputy Superintendent Kovalchik, Correctional Officers Lynch, and Alesheski, as well as Chief Hearing Examiner Luquis in any constitutional misconduct. *See* Doc. 57, p. 4.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right,

privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). To establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

That said, federal civil rights claims brought under § 1983 cannot be premised on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976). As the Third Circuit explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207.

Accordingly, any attempt by Plaintiff to establish liability against either Superintendent Tritt or Deputy Superintendent Kovalchik on the basis of their respective supervisory capacities must fail.

Furthermore, prisoners have no constitutionally protected right to a grievance procedure. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Speight v. Sims*, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") . While prisoners do have a constitutional right to seek redress of their grievances from the Government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure).

Plaintiff asserts that both Tritt and Kovalchik failed to investigate his misconduct appeal. Based upon the standards set forth above, any attempt by Mutschler to establish liability against Tritt and Kovalchik based upon their review of his misconduct appeal does not satisfy the personal involvement requirement.

The unopposed request for dismissal will therefore be granted in favor of Defendants Tritt and Kovalchik.

Plaintiff states that Defendant Luquis personally presided over his misconduct hearing. It is alleged that the Hearing Examiner failed to investigate Mutschler's non-attendance at the hearing and as a result the finding of guilt was based on an inadequate record as the Plaintiff was denied the opportunity to present witnesses and evidence. Those allegations of denial of due process against Chief Hearing Examiner Luquis adequately satisfy the personal involvement requirement. Accordingly, Defendant Luquis' request for entry of dismissal on the basis of lack of personal involvement will be denied.

Plaintiff alleges that Defendants Lynch and Alesheski violated the Pennsylvania Crimes Code by falsely stating that the inmate refused to attend an August 5, 2015 disciplinary hearing. These Defendants argue that an allegation of engaging in criminal activity does not by itself adequately allege personal involvement in constitutional misconduct. Consequently, they maintain that dismissal should be granted in their favor on the basis of lack of personal involvement.

Based upon this Court's review of the Amended Complaint, Plaintiff's allegations that Lynch and Alesheski violated his constitutional due process rights

by not allowing him to attend his institutional disciplinary hearing adequately satisfies the personal involvement requirement.. Lynch and Alesheski's request for dismissal on the basis of non-personal involvement will therefore be denied.

**C.     Due Process**

Plaintiff also contends that he has a liberty interest in remaining free from a misconduct. *See* Doc. 52, p. 15, ¶ 17. Mutschler asserts that Chief Hearing Examiner Luquis violated due process by failing to investigate the false contention by prison officials that he did not wish to attend his misconduct hearing. The Plaintiff adds that as a result he was denied the opportunity to call witnesses and to present evidence. Consequently, Mutschler concludes that the Chief Hearing Examiner's decision was based upon an incomplete record. Furthermore, Plaintiff contends that other Defendants violated due process by not investigating his above claims on administrative appeal.

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A protected liberty interest may be created by either the Due Process Clause itself or by state law. In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.

*See Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In *Wolff v. McDonnell*, 418 U.S. 539, 563-73 (1974), the Supreme Court of the United States held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. *Wolff*, 418 U.S. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. *Id.*

An additional procedural requirement was set forth in *Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill*, 472 U.S. 445, 453-56 (1985). In *Hill,* the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal. The Third Circuit and other courts applied the *Wolff* principles to prison disciplinary hearings which did not result in withdrawal of good time credit but instead in disciplinary or administrative segregation. *See, Grill v. Coughing*, 31 F.3d 53 (2d Cir. 1994); *Griffin v. Sprat*,

969 F.2d 16 (3d Cir. 1992); *Cook v. Lehman*, 863 F. Supp. 207 (E.D. Pa. 1994).

However, the Supreme Court's subsequent decision in *Sandin* marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. *Sandin*, 515 U.S. at 481. In *Sandin*, the Supreme Court reasoned, *inter alia*, that "[discipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. *Id.* at 485. The nature of an inmate's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at the prison. *Id.* at 486.

Focusing on the nature of the punishment instead of on the words of any regulation, the Supreme Court held that the procedural protections in *Wolff* were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* The *Sandin* Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's

environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence.

Courts within this Circuit, applying *Sandin* in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement. *See Torres v. Favor*, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); *Smith v. Meningea*, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest); *Vorhauer v. Conrad*, No. 3:CV-90-2196 (M.D. Pa. Jan. 29, 1997) (Vanaskie, J.) (inmate's confinement in disciplinary custody for ninety (90) days in accordance with Department of Corrections procedures did not give rise to a protected liberty interest).

Based upon an application of the rules of law set forth in *Sandin* and the subsequent line of decisions cited above, the one hundred and eighty (180) day disciplinary custody term imposed against Mutschler was not of such magnitude as to implicate a protected liberty interest under *Sandin*. *See* Doc. 52, p. 6, ¶ 7. Accordingly, Defendants' unopposed request for entry of dismissal with respect to the allegations of denial of due process will be granted.

### D. Parole

Mutschler also claims that he has a liberty interest in parole. Specifically, he contends that he has a right to be seen by the Pennsylvania Board of Probation and Parole (Parole Board). *See* Doc. 52, p. 20. Plaintiff asserts that due to the issuance of the misconduct charge he was not considered for parole.

The United States Supreme Court in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) announced that prisoners may challenge the constitutionality of state parole proceedings in § 1983 actions seeking declaratory and injunctive relief. The Court indicated that such actions could only be employed in cases where the success of the procedural challenges would not necessarily require immediate or speedier release for the prisoner. Thus, Plaintiff's parole related claim can be pursued under § 1983 only to the extent that it rests on *Wilkinson*.

It is well-settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). The Pennsylvania parole statute does not create a liberty interest in the right to be paroled. *Rodgers v. Parole Agent SCi-Frackville, Wech*, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); *Thorpe v. Grill*, 80 Fed. Appx. 215, 2003 WL 22477890 (3d Cir. 2003)(Because there is no constitutional right to parole, any

substantive due process claim is foreclosed).

Unlike *Wilkinson*, this is not a case where a prisoner is challenging the constitutionality of a state parole procedure. Rather, Plaintiff is challenging the legality of a misconduct charge which prevented the consideration of his application for parole.

As relief, Plaintiff's pending action seeks an award of monetary damages and the expungement of his misconduct charge. Since the Amended Complaint does not raise a *Wilkinson* type claim against a Parole Board official for injunctive or declaratory relief, Plaintiff's § 1983 claim of denial of parole is subject to dismissal.

### E. Retaliatory Cell Search

Plaintiff contends that he was subjected to a retaliatory cell search by Defendants Jones, Starling and Schultz. Plaintiff states that Schultz directed that the search be undertaken and, if possible, Plaintiff be issued a misconduct "for many reasons like I was litigating against the D.O.C. [Department of Corrections] in a civil suite [sic], I signed sworn statement against this officer for other inmates." Doc. 52, p. 11, ¶ 2.

Defendants maintain that Plaintiff has failed to adequately state a claim for retaliation because the Amended Complaint provides only general information

which fails to show a causal connection between Mutschler's exercise of a constitutionally protected right and the undertaking of a cell search. *See* Doc. 57, p. 8. As previously noted, the argument for dismissal is unopposed.

The Supreme Court in *Hudson v. Palmer*, 468 U.S. 517 (1984), established that inmates have no privacy rights in their cells; consequently, there is no constitutional prohibition against prison officials conducting unauthorized cell searches. *Id.* at 525-26; *Rambert v. Durant*, No. 95-5636, 1996 WL 253322 *2 (E.D. Pa. May 10, 1996). However, it has also been held that while the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible. *Hudson*, 468 U.S. at 530; *Prisoners' Legal Assen v. Robertson*, 822 F. Supp. 185, 189 (D.N.J. 1993); *Proudfoot v. Williams*, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992).

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (*quoting Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action

"sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.*(*quoting Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Id.* at 333-34(quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 Fed. Appx. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. *Krouse v. American Sterlizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." *Carter v. McGrady*, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. *Rauser,* 241 F.3d at 334.

More recently, our Court of Appeals clearly opined that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a casual link." *Watson v. Rozum*, No. 13-3510, slip op. at 5 (3d Cir. Aug. 23, 2016).

The first prong of *Rauser* requires that the inmate be engaged in a constitutionally protected activity. Filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. *Anderson v. Davila*, 125 F.3d 148, 161 (3d Cir. 1997); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Given those considerations, the Plaintiff's contention that he was retaliated against for filing a lawsuit and engaging in other litigation related activities arguably satisfies the first prong of *Rauser*

The second prong of *Rauser* requires that Mutschler allege that he suffered adverse action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. The third *Rauser* prong requires a prisoner prove that his constitutionally protected conduct was a substantial or motivating factor for the alleged retaliation.

In the instant case, there are simply no sufficient facts set forth in the Amended Complaint which arguably suggest that any of the Defendants acted with

a retaliatory motive. Plaintiff does not dispute that his autobiography contained sexually explicit material. Second, a review of Plaintiff's filings in the Middle District of Pennsylvania shows that prior to his initiation of the pending action, Mutschler filed two habeas corpus petitions, but no civil rights complaints. As such, there is no indication that Mutschler had pursued any civil rights claims against Schultz or any other prison official prior to the challenged cell search. This is a factor which clearly undermines Mutschler's assertion of a pre-existing retaliatory motive. Moreover, Plaintiff does not provide any specifics regarding his assertion that he executed supporting statement for use by other prisoners in lawsuits. Given the vagueness of that assertion it cannot be concluded that those alleged supporting statements could satisfy Plaintiff's burden of establishing a retaliatory motive. In any event, Plaintiff has not opposed the argument for dismissal.

Based upon those considerations, Mutschler has failed to set forth any facts which could adequately establish a retaliatory motive by any of the Defendants. This Court is equally satisfied that the *Rauser* requirement that Plaintiff allege that his engagement in constitutionally protected activity was a motivating factor for the alleged acts of adverse action was not met with respect to the vague claim of retaliation. Accordingly, the request for dismissal of the retaliation claim will be

granted.

## III. CONCLUSION

Finally, with respect to some additional concerns previously noted by the Court of Appeals in remanding this matter, I respectfully suggest that despite a liberal review of the Amended Complaint there are no facts set forth that could support a claim by Plaintiff that the taking of his autobiography violated his First Amendment right to free expression. To the contrary, Plaintiff does not dispute that his writing contained sexual material. In fact, Mutschler admits that his writing set forth all kinds of abuse and notes that names were changed to protect the innocent.

Second, Mutschler indicates that he was writing his autobiography so that the prison's mental health staff would have a better understanding of his background. However, there is no assertion that any mental health professional directed or recommended that the Plaintiff author his autobiography. As such, there is no discernible claim that the taking of the autobiography interfered with the Plaintiff's Eighth Amendment right to receive mental health treatment. Rather, Mutschler's Amended Complaint focuses on his claims that the taking of his autobiography was retaliatory and that there was a denial of due process during the ensuing misconduct proceedings.

Since all the claims set forth in the Amended Complaint have been addressed by the pending motion and found deficient, the unopposed motion to dismiss will be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge